UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| KYLE SOLTESZ,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>RUSHMORE PLAZA CIVIC CENTER, a political subdivision of the City of Rapid City, and CITY OF RAPID CITY, a political subdivision of the State of South Dakota,<br><br>　　　　　　Defendants. | CIV. 11-5012-JLV<br><br>ORDER |

**INTRODUCTION**

On November 21, 2014, a jury entered a verdict in the amount of $112,562.00 in favor of plaintiff and against defendants and a verdict in the amount of $14,820.62 in favor of defendants and against plaintiff. (Docket 140). On November 25, 2014, a judgment was entered consistent with the jury's verdict.[1] (Docket 142). On December 22, 2015, defendants timely filed a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b).[2] (Docket 146). Plaintiff resists the motion in its entirety. (Docket 156). For the reasons set forth below, defendants' motion is denied.

---

[1] An amended judgment including prejudgment interest was filed on January 21, 2015. (Docket 159).

[2] Defendants made a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) at the close of plaintiff's case-in-chief. (Docket 134 at p. 6). That motion was denied. Id. Defendants' renewed motion at the close of all the evidence was also denied. Id. at p. 7. Defendants did not order the trial transcript so the court will rely on its trial notes and trial exhibits for resolving defendants' present motion.

## DISCUSSION

When resolving a motion for judgment as a matter of law under Fed. R. Civ. P. 50, the court must determine whether there is sufficient evidence to support the jury's verdict. Anderson Marketing, Inc. v. Maple Chase Co., 241 F.3d 1063, 1065 (8th Cir. 2001). The court must view the evidence in a light most favorable to the prevailing party and must give great deference to the jury's verdict. Id.; Howard v. Missouri Bone & Joint Center, Inc., 615 F.3d 991, 995 (8th Cir. 2010). The court "must not engage in a weighing or evaluation of the evidence or consider questions of credibility." Howard, 615 F.3d at 995 (citation and internal quotation marks omitted); see also White v. Pence, 961 F.2d 776 (8th Cir. 1992) (same). The court will not reverse a jury's verdict unless it finds "no reasonable juror could have returned a verdict for the non-moving party." Anderson Marketing, Inc., 241 F.3d at 1065 (citation and internal quotation marks omitted); see also Structural Polymer Group, Ltd. v. Zoltek Corp., 543 F.3d 987, 991 (8th Cir. 2008) ("In reviewing the sufficiency of the evidence to support the jury's verdict, [the court] interpret[s] the record in a light most favorable to the prevailing party, affirming unless no reasonable juror could have reached the same conclusion."). "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining the position of the nonmoving party." Howard, 615 F.3d at 995 (citation and internal quotation marks omitted).

Plaintiff prevailed on all five claims made against the defendants. (Docket 140). Those claims included state claims for breach of lease, conversion and interference with business relationships, and two federal claims under 42 U.S.C. § 1983, identified as an unreasonable seizure claim and a due process claim. Id. Defendants challenge only the federal claims under 42 U.S.C. § 1983. (Docket 147 at p. 2). Defendants seek judgment as a matter of law claiming "[p]laintiff failed to provide any evidence at trial to establish that the decision to terminate his Concessionaire Contract was made by the 'final policymaking authority,' a prerequisite to municipal liability under 42 U.S.C. § 1983 . . . ." Id. at p. 1. They acknowledge the only issue advanced in the motion "is whether there exists a 'legally sufficient evidentiary basis' for the jury to find that the decision which led to the Plaintiff's claims under § 1983 was made by 'the official or officials responsible for establishing final policy.' " Id. at p. 11. They argue that "[i]n order to establish that the City and the Civic Center are liable for the acts of Brian Maliske, the Plaintiff must prove that Brian Maliske was the individual with 'final policymaking authority.' " Id. at p. 12.

Viewing the evidence in a light most favorable to plaintiff as the prevailing party, the following facts are relevant to defendants' motion. Anderson Marketing, Inc., 241 F.3d at 1065. On October 7, 2009, plaintiff Kyle Soltesz, d/b/a Top Dog Enterprises, entered into a lease agreement with the Rushmore Plaza Civic Center ("Civic Center"). (Trial Exhibit 1). The lease was signed by Mr. Soltesz and Brian Maliske, the general manager of the Civic Center. Id.

3

Under the lease, Mr. Soltesz was provided concessionaire space in the Civic Center to sell food and beverage items to patrons of the Civic Center during those periods when there were functions occurring in the facility. The lease required the Civic Center to give Mr. Soltesz 45 days written notice prior to termination of the agreement and an additional 90 days to remove equipment after the written notice was given. Id. at ¶ X.

On February 3, 2011, Mr. Soltesz and one of his employees were involved in a physical altercation in the Civic Center. A portion of this event was captured on video equipment operated by the Civic Center. (Trial Exhibit 13). After meeting with Mr. Maliske, a Rapid City Police Officer issued a "Courtesy Warning" and "no trespass per Brian Maliske" to Mr. Soltesz. (Trial Exhibit 6). The police officer escorted Mr. Soltesz from the building and advised him that if he returned to the Civic Center premises he would be arrested for trespass.

On February 7, 2011, Mr. Soltesz called Mr. Maliske wanting to talk about the Top Dog Enterprises' concession business. During the call, Mr. Maliske said he could not talk with Mr. Soltesz but that the Civic Center Board of Directors was meeting the next day with Mr. Maliske about Mr. Soltesz.

On February 8, 2011, a letter was authored by Mr. Maliske and addressed to Mr. Soltesz. (Trial Exhibit 2). The essence of Mr. Maliske's letter was that Mr. Soltesz's contract with the Civic Center was terminated effective immediately. Id. at p. 2. Mr. Soltesz was reminded the no trespass ticket issued by the police officer remained in effect. Id. The only exception allowed

4

Mr. Soltesz to meet with Mr. Maliske and another Civic Center staff member to settle his account.  Id.  Within 20 days of that meeting all amounts due to the Civic Center were to be paid in full.  Id.  After the account was fully paid, Mr. Soltesz would be required to meet with Mr. Maliske to plan the removal of plaintiff's equipment.  Id.  Mr. Soltesz was specifically warned that he "may not return to the Civic Center at any other time."  Id.  Jason Green, City Attorney for the City of Rapid City, and Eddie Rypkema, President of the Civic Center Board, were "cc'd" on Mr. Maliske's letter.  Id.

City Attorney Green testified Mr. Maliske's letter was prepared before the Civic Center Board of Directors' meeting of February 10, 2011.  Prior to the Board of Directors' meeting, City Attorney Green and Eric Pickar, Mr. Soltesz's attorney, talked about the possibility of Mr. Soltesz being allowed to sell his Top Dog equipment.  After the Board of Directors' meeting on February 10, City Attorney Green met with Attorney Pickar and advised him nothing had changed regarding Mr. Soltesz's situation.  Mr. Maliske's February 8, 2011, letter was handed to Attorney Pickar during the meeting with City Attorney Green.

Throughout the remainder of the month of February and into May 2011, City Attorney Green reminded Rodney Schlauger, Mr. Soltesz's other attorney, that the no trespass order was still in place.  (Trial Exhibit 238).  Mr. Maliske participated in the e-mail chain of communications with Mr. Schlauger about removal of plaintiff's equipment.  Id.

5

Civic Center events coordinator and life safety officer Larry Dale testified Mr. Maliske made all the decisions for the Civic Center concerning Mr. Soltesz and Top Dog Concessions. Mr. Maliske instructed Mr. Dale that either Mr. Soltesz's mother would operate Top Dog Concessions or it would not open. Mr. Maliske was very emphatic about his position and would not permit Mr. Soltesz's employees to retrieve equipment or inventory. Pursuant to Mr. Maliske's instructions, Mr. Dale's group moved plaintiff's inventory and equipment to a secured area of the Civic Center.

When addressing plaintiff's § 1983 unreasonable seizure claim under the Fourth Amendment and the Fourteenth Amendment, the court gave the following instruction:

> A political subdivision like the Rushmore Plaza Civic Center generally may not be held responsible for the impermissible acts of its officials or employees. A political subdivision like the Rushmore Plaza Civic Center may be held responsible for the impermissible acts of its officials or employees when an official responsible for establishing final policy with respect to the subject matter in question deliberately chooses, from among various alternatives, to follow a course of action.

(Docket 131 at p. 33). Defendants acknowledge this instruction is a correct statement of the law under Pembaur v. City of Cincinnati, 475 U.S. 469 (1986). (Docket 162 at p. 3). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 481. "The official must also be responsible for establishing final government policy respecting such activity before the

6

municipality can be held liable."  Id. at 482-83.  "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  Id. at 483.

Defendants argue the final policy making authority for the Civic Center rested with the Board of Directors.  (Docket 147 at p. 13) (referencing S.D.C.L. § 9-52-9 and Rapid City Municipal Code 2.76.010-150).  Defendants assert "[a]s a matter of South Dakota law, the Civic Center Board of Directors are the individuals who possess the 'final policymaking authority' with respect to the contracts and vendors at the Civic Center."  Id. at p. 14.  Defendants say the court should conclude that "no evidence [was] produced by the Plaintiff that the Civic Center Board of Directors made any decisions in relationship to the Plaintiff."  Id.  Because of defendants' claimed deficiency in plaintiff's evidence, they argue the defendants are entitled to judgment as a matter of law.  Id. at p. 15.

There was undisputed evidence presented during the course of trial from which the jury could conclude that Mr. Maliske was the final policymaker for the Rushmore Plaza Civic Center.[3]  His decisions were disclosed to and ratified by the Board of Directors when they did not rescind or otherwise modify the

---

[3]If it is the defendants' position that the court must conduct this analysis as a matter of law, the court finds by the greater convincing weight of the evidence presented at trial that Mr. Maliske was the final decisionmaker for the Rushmore Plaza Civic Center and the City of Rapid City with regard to their relationship with Mr. Soltesz.  Pembaur, supra.

7

provisions of the February 8, 2011, letter and the termination of Mr. Soltesz's lease with the Civic Center.   By their actions, the Board of Directors delegated to Mr. Maliske the authority to make the final decisions regarding Mr. Soltesz and his property located in the Civic Center.   "[T]his delegation of authority," permitting Mr. Maliske to perform in the manner he did, permitted him to "act[] as the final decisionmaker for the [city], and the [city] may therefore be held liable under § 1983."   Pembaur, 475 U.S. at 485.

## ORDER

Based on the above analysis, it is

ORDERED that defendants' motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) (Docket 146) is denied.

Dated September 8, 2015.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE